WILLIAM WHITTEN & others *vs.* MARY WHITTEN.

Where a wife, acting under a power of attorney from her husband, authorizing her, among other things, to receive and collect all money and other property due to him, for her own use, purchased land with money so received, and took a conveyance thereof to herself; and, after the death of the husband, a bill in equity alleging these facts, and also that the husband never intended that such purchase should be a provision for the wife or her separate property, was brought by the heirs at law of the husband against the widow, for a conveyance of the land so purchased by her; it was held, on demurrer to the bill, that, upon the allegations therein contained, there was no resulting trust in favor of the husband or his heirs.

THIS was a bill in equity, brought by William Whitten and Caroline E. Whitten, minors, grandchildren and heirs at law of Robert Whitten, by their next friend, Hiram D. Coombs, and by Hiram D Coombs, as the administrator of the said Robert Whitten, against Mary Whitten, his widow. The questions arising under the bill, so far as the administrator was concerned, were waived at the hearing.

The bill alleged, that Robert Whitten was a person of means and property, and had real and personal estate, and that the defendant brought no property to him on her marriage ; that, at sundry times during the life of Robert Whitten, the defendant purchased several parcels of real estate, and received deeds thereof purporting to convey the same to her alone, and that the purchase money paid for these estates was the proper money of her husband, and not the separate money or property of the defendant ; that the defendant, also, during the period above mentioned, sold certain parcels of the land so purchased, and made title thereto by grants in which her husband was joined, but in which the granted premises purported to be conveyed in the defendant's right, and that she received the proceeds of the estates so sold ; that, during the same period, the defendant, in like manner, invested the money of her husband in mortgages of real estate, taking the conveyances thereof in her own name ; that Robert Whitten, so far as he acquiesced in these investments in the defendant's name, did not do so because he considered or intended to treat the property so invested, as the sole property of his wife, or because it was in fact her sole property, or with the intent thereby to make a provision for her in lieu of dower or otherwise ; that, for thirty years, before his decease, Robert Whitten earned by his own labor, as a cordwainer or cobbler, considerable sums of money, which were not necessary and not appropriated to the support of his family, as, during the same time, boarders and lodgers were taken in his family, to an extent more than sufficient to defray all his household expenses ; that, by the investments and purchases above mentioned, the defendant had appropriated

to herself the whole of her husband's property, including money which he earned and received from his trade, as well as other money and property belonging to him; and that he never intended that the defendant should make the purchases and investments above mentioned as an appropriation, investment, or provision for herself, and for her sole use, or as her sole property, but, on the contrary, that he intended and frequently declared, that his heirs and representatives should, and that he expected and supposed they would, take their several shares and interests therein, as by the statute of distributions they would otherwise be entitled to do. The plaintiffs averred, that, by reason of the marital rights of Robert Whitten, and because the money with which the purchases were made was not the sole property of the defendant, and because he never intended they should become her sole property, to the exclusion of his heirs and representatives, and because of the application and investment, as above stated, by the defendant, a trust had arisen upon each of the deeds mentioned in the bill in favor of the plaintiffs, which ought to be enforced; and they prayed, that the defendant might be decreed to stand seized of the said real estate in trust for the plaintiffs, William and Caroline, and to convey the whole, or such parts thereof as the court might direct, to them or in trust for them, and to account to them for the rents and profits thereof.

The foregoing were the principal allegations of the bill, as originally filed; but the same was subsequently amended, and by agreement of the parties, a power of attorney duly executed from Robert Whitten to the defendant, dated September 6th, 1811, which was anterior to the transactions set forth in the bill, was to be considered as inserted therein, and as making a part of the plaintiffs' case.

The power of attorney was as follows: —

"Know all men by these presents, That I, Robert Whitten of Boston, in the county of Suffolk and commonwealth of Massachusetts, gentleman, have constituted, ordained and made, and in my stead and place put, and by these presents do constitute, ordain and make, and in my stead and place put, Mary Whitten, of Boston aforesaid, my true and lawful wife, to be my true, suffi

Whitten & others *v.* Whitten.

cient, and lawful attorney, for me and in my name and stead, and to her use, to ask, demand, levy, require, recover and receive, of and from all and every person or persons, whomsoever the same shall or may concern, all and singular sum and sums of money, debts, goods, wares, merchandise, effects and things, whatsoever and wheresoever they shall and may be found due, owing, payable, belonging and coming unto me, the constituent, by any ways and means whatsoever. And I do also hereby grant and give to the said Mary, my true and lawful wife, all the furniture and household utensils now in my possession, with the right to merchandise and dispose of the same in any manner she may think fit. I do also authorize and empower her to receive and retain to her own individual use any moneys arising from the profits of boarders, or that she may otherwise lawfully come into possession of; giving and hereby granting unto my said attorney my full and whole strength, power and authority in and about the premises; and to take and use all due means, course and process in the law, for the obtaining and recovering the same; and of recoveries and receipts thereof, in my name to make, seal, and execute due acquittance and discharge; and for the premises to appear, and the person of me, the constituent, to represent before any governor, judges, justices, officers and ministers of the law whatsoever, in any court or courts of judicature, and there, on my behalf, to answer, defend and reply unto all actions, causes, matters and things whatsoever, relating to the premises. Also to submit any matter in dispute to arbitration, or otherwise, with full power to make and substitute one or more attorneys under my said attorney, and the same again at pleasure to revoke. And generally to say, do, act, transact, determine, accomplish, and finish all matters and things whatsoever, relating to the premises, as fully, amply and effectually, to all intents and purposes, as I, the said constituent, if present, ought or might personally, although the matter should require more special authority than is herein comprised. I, the said constituent, ratifying, allowing and holding firm and valid, all and whatsoever my said attorney or her substitutes shall lawfully do, or cause to be done, in and about the premises, by virtue of these presents. In witness whereof, I have hereunto set my hand and seal, the twenty-sixth day of September, in the year of our Lord one thousand eight hundred and eleven."

In the deeds, which were made a part of the case, it appeared that the consideration was expressed to be paid by Mary Whitten, wife of Robert Whitten.

The cause was submitted to the court upon the facts set forth in the bill, including the power of attorney, in the same manner as if the defendant had demurred for want of jurisdiction.

*M. S. Clarke,* for the defendant.

*G. T. Curtis,* for the plaintiffs.

FLETCHER, J. The plaintiffs are William and Caroline E. Whitten, the two grandchildren and heirs at law of

Robert Whitten, late of Boston, and the administrator of said Robert. But the questions, so far as the administrator is concerned, are waived, so that, for this hearing, the heirs alone are the parties plaintiff. The defendant is the widow of Robert Whitten, and the grandmother of the heirs at law.

The bill charges, in substance, that at several times during the life of Robert Whitten, divers parcels of real estate in Boston were purchased and conveyances taken to his wife, Mary Whitten, this defendant; that the purchase money paid for these estates was the proper money of Robert Whitten, and was not the separate money or property of the defendant; and that the conveyances were so made to the defendant, then the wife of Robert Whitten, without any intention on his part to make a provision for her in this form of investment, or in order to make the estates so purchased her separate property. This is the substance of the bill as it originally stood. By agreement of parties, a power of attorney executed by Robert Whitten to his wife, bearing date September 6th, 1811, is to be taken as inserted in the bill, and making a part of the plaintiffs' case, as set out in the bill. Of the character and effect of this power of attorney, I shall have occasion hereafter to speak more fully.

By agreement of the parties, the cause is submitted to the consideration of the court upon the facts set forth in the bill, including the power of attorney, in the same manner as if the defendants had demurred thereto for want of jurisdiction.

The court are to determine : 1st, Whether the bill can be maintained on the ground of trust, therein set forth, independent of the allegation of fraud, contained in it, so far as the bill charges fraud ; and 2d, Whether the bill can be maintained upon the whole case therein made.

Though the inquiry as to the jurisdiction is thus stated under two distinct heads, yet as this court has no jurisdiction of fraud as a distinct ground of proceeding in equity, the inquiry is necessarily limited to the single question, whether or not the bill, containing in it the power of attorney of Robert Whitten to his wife, the present defendant.

as a part of the plaintiffs' claim, makes and sets out a case within the jurisdiction of this court on the ground of trust.

The question was raised and ably discussed by the counsel, whether this court has jurisdiction of implied or resulting trusts.  But since the enactment of the revised statutes, it has been considered, that under and by virtue of the provisions therein contained, on this subject, this court has jurisdiction of implied as well as express trusts.  By the language of the statute, no distinction is made between express and implied trusts ; a general jurisdiction being given in cases of trust.  This opinion was distinctly expressed by the court in the case of *Wright* v. *Dame,* 22 Pick. 55, and may now be taken as settled doctrine, without going more particularly into the reasons upon which it rests.  It is then maintained, on the part of the plaintiffs, that the bill discloses a case of a resulting trust.  It is said, that the bill presents the ordinary case of a trust resulting in favor of the party who has advanced the purchase money of an estate, where the conveyance is taken in the name of another person, and there is no proof of an intention to make the nominal purchaser the beneficial owner of the estate.  Many authorities were cited in support of this general doctrine.

It is no doubt an established doctrine in equity, that when a man buys land in the name of another, and pays the consideration money, the land will, generally, be held by the grantee, in trust for the person who so pays the consideration money.  The doctrine arises from the natural presumption, that he who supplies the money means the purchase to be for his own benefit, rather than for that of another.  But there are exceptions to this general doctrine, which stand upon peculiar reasons.  Thus if a parent purchase, in the name of a son, the purchase is to be deemed *prima facie* and intended as an advancement, so as to rebut the presumption of a resulting trust for the parent.  The moral obligation of a parent to provide for his children is the foundation of this exception, or rather, of this rebutter of a presumption ; since it is not only natural, but reasonable, to presume that a parent

by purchasing in the name of a child, means a benefit to the latter, in discharge of this moral obligation, and also as a token of parental affection. 2 Story, Eq. § 120.

The like presumption exists in the case of a purchase by a husband in the name of his wife, and of securities taken in her name. Indeed, Mr. Justice Story says, that the presumption is stronger in the case of a wife, than in that of a child. It is, therefore, an established doctrine, that where the husband pays for land conveyed to the wife, there is no resulting trust for the husband ; but the purchase will be regarded and presumed to be an advancement and provision for the wife. This is fully supported by various cases, as well as by the text writers. The present case belongs to this last class of cases of husband and wife. The bill alleges that the considerations for the several conveyances made to the wife were paid by the husband. The presumption is, then, that it was a provision for the wife, and there is no resulting trust in favor of the husband. But it is said that this presumption of a provision for the wife is rebutted by the distinct allegations in the bill, that it was not the intention of the husband to make a provision for his wife in this form of investment, or to make the estate so purchased her separate property, and that these allegations are admitted by the demurrer.

This view, perhaps, might be well sustained, if there were nothing in the bill itself to control the effect of these allegations. But the power of attorney from the husband to the wife is made a part of the bill, and must be taken into consideration in connection with the other allegations in the bill. This power was executed before any of the purchases were made, from which the trust is alleged to result. This is a very extensive power, giving to the wife general authority to receive the moneys and effects of the husband, to her use, that is, to the use of the wife. It also gives her power to receive to her own individual use any moneys arising from the profits of boarders. In this instrument, also, the furniture is given to the wife, with the right to dispose of the same as she may think fit. Now, assuming for the present

17 *

that the estates in question, which are alleged to be held in trust, were paid for with moneys received by the wife under this power of attorney, and the express provision in the power necessarily and completely disproves the existence of · any trust.   By this power, the husband distinctly authorized the wife to receive the moneys under it to her use, and to her own individual use, which directly and irresistibly repels the idea that the purchase was for the benefit of the husband.   On the contrary, it was a settlement of the property by the husband upon the wife in express terms for her use.

The express provision in the power, therefore, conclusively negatives the allegation in the bill, that it was not the intention of the husband to settle the property on the wife.   The fact, which appears in the power, must control the allegation in the bill.   The allegation of the heirs at law, as to the intention of the ancestor, are overcome by the express declaration of the ancestor himself as to his intention.   The power being set out in the bill, and made a part of it, taking into view the whole bill, including the power, there is no trust disclosed in the bill, of which the court can take jurisdiction The purpose of the husband being distinctly expressed, there is no occasion to look to the amount or any other circumstances to ascertain the intention.

But it is maintained, on the part of the plaintiffs, that the terms, " to her use," and " to her own individual use," do not import a grant of separate property, or confer any separate rights or interest on the wife, to the exclusion of the rights of the husband.   To this point, numerous cases were referred to, in which it was held, that similar expressions in gifts and grants to the wife did not create any separate property in her, to the exclusion of the rights of the husband.   But these were all cases of gifts and grants, of persons other than the husband, to married women, and were held not to create a separate property in the wife, upon the general principle, that in equity as at law a gift to the wife is a gift to the husband. It is perfectly consistent with the expression " to her use," when used by a third person, that the rights of the husband

should remain. But it is well settled, however, that a court of equity will execute a trust for the sole and separate use of the wife, where the intention of the donor to that effect is unequivocally declared.

But cases, which turn upon the general doctrine, that a gift to the wife is a gift to the husband, do not apply to this case, which is a grant by the husband himself to the wife. The doctrine, that a gift to the wife is a gift to the husband, cannot apply where the husband himself makes a gift or grant to the wife, which surely cannot be taken as a gift or grant to himself. Besides, in all cases, where the intention to give a separate property to the wife is manifest, that intention is to be carried into effect ; and where the husband himself makes a gift or grant to the wife, the intention to relinquish his own rights in favor of the wife, and thus to give her a separate property or interest, is necessarily and most clearly and unequivocally manifested and declared. The cases, therefore, which have been referred to, to show that expressions, such as those used in the power, do not create a separate property in the wife, cannot apply to this case ; while, by these terms, as between the husband and wife, the intention of the husband to give a separate right and interest in the property to the wife is unequivocally declared, and such intention, by all the authorities, is to be carried into effect.

As a conclusion from the position taken in behalf of the plaintiffs, that the power of attorney gave no separate interest or property to the wife, or in connection with that position, it was maintained, that the power created an express trust in favor of the husband, Robert Whitten. The argument was, that as the terms used were not sufficient to convey a separate property to the wife, then as the power authorized the wife to receive the money of the husband as his attorney, an express trust in favor of the husband was thus created, as to all moneys received under such power. But the conclusion to which the court has come, as to the rights of the wife in the moneys received under the power, necessarily excludes

the idea of any express trust in favor of the husband by force of the power.

The result is, that assuming that the money paid for the estate alleged to be held by the wife in trust was received by her under the power of attorney, and taking the power as set out in the bill, and making a part of the plaintiffs' case, the court are of opinion that there is no trust, express or implied, disclosed in the bill, which can give the court jurisdiction of the case.

But though the argument for the plaintiffs seems to assume, that the money paid for the estates in question was received under the power, yet that fact does not distinctly appear in the bill ; and the allegations in the bill leave it possible, that the considerations for the estates alleged to be held in trust may have been paid from moneys of the husband other than those received under the power of attorney. It is open now, therefore, notwithstanding this decision, for the plaintiffs, if practicable, to establish a trust, distinct from and independent of the power of attorney, and the moneys received under that instrument. But the law is clear, that there is no resulting trust in favor of the husband from the fact that the lands conveyed to the wife were paid for with the money of the husband. The legal estate is clearly in her, and the presumption of law is, that it is for her own benefit. A trust, therefore, if there be any, for the husband, must be shown and established by other evidence than that showing merely that the purchase money was paid by the husband. Should the plaintiffs proceed to establish a trust, the question whether the wife can be the trustee of her husband will be open, as the court has not had occasion to consider that subject in the present position of the case.